[Civ. No. 18905. Third Dist. July 22, 1980.]

DOUG KAYLOR, Petitioner, v.
THE SUPERIOR COURT OF NEVADA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Richard E. Draper, William A. Heidelberger and Floyd J. Silliman for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and John W. Spittler, Deputy Attorneys General, for Real Party in Interest.

OPINION

**REYNOSO, J.**—Our response to the following question is dispositive. May a search or seizure warrant be maintained when (1) the supporting affidavit incorporated by reference over 155 pages of material, principally police reports, some of which were illegible, and (2) the magistrate did not read some of the reports which formed a part of the affidavit. We hold, under the facts of this case, that the search warrant fails and that, accordingly, the evidence seized in the search must be suppressed.

By writ of mandate petitioner Doug Kaylor seeks review of the denial of a Penal Code section 1538.5 motion to suppress evidence seized in a search of his residence. Petitioner is currently charged with burglary, receiving stolen property, and conspiracy. These charges are based upon evidence obtained during a search pursuant to two search warrants. One warrant authorized a search of petitioner's residence, and the other authorized a search of another residence.

## I

A Nevada County deputy district attorney and two deputy sheriffs from the same county went to see Magistrate George Pifer at his home on the evening of March 9, 1979, at approximately 7 p.m. Their purpose was to obtain the two search warrants mentioned above. Two affidavits supported the issuance of each of the warrants. The first consisted of a one-page preprepared form with blanks to be filled. The completed form includes the name of the affiant, the name of the person in possession of the personal property, a description of the premises where the property is to be found, and a list of the personal property; no declaration is included regarding the commission of any crime. The second affidavit is a two-sentence affidavit subscribed and sworn before the magistrate which reads in its entirety: "Your affiant has prepared reports and has received and read reports prepared by other peace officers, all of which is attached hereto and incorporated by reference herein as though fully set forth and which comprises a total of 155 pages. [¶] WHEREFORE, it is prayed that a search be issued."

The search, pursuant to the warrants, took place on the same evening. The introduction of substantial quantities of evidence obtained in the two searches was challenged in a Penal Code section 1538.5 hearing. The motion to suppress was based on the allegation, among others, that the method of executing the warrants violated the state and federal Constitutions. The hearing took two days. The warrants and supporting affidavits were introduced as was extensive testimony. The record of the hearing, and the documents which are part of the record tell the following as it pertains to this appeal:

The review of the affidavits took between 20 minutes (the lowest estimate of one of the two deputy sheriffs) and 45 minutes "upwards" according to the magistrate. The magistrate examined a number of the attachments, but he was annoyed at the amount of time the review was taking for it was "eating into [his] off hours." The magistrate specifi-

cally testified that he did *not* read all the reports which were part of the affidavit offered in support of issuance of the warrants. Further, he testified that "I don't have a specific recall" as to which reports were read and which were not. The magistrate asked the deputy district attorney questions about the extensive material. No record was made of those discussions. The deputy district attorney, however, testified that nothing substantive was discussed. The magistrate, according to the deputy district attorney, did peruse the entire document at his desk.

Many of the reports which were attached and made part of the affidavit were hard to read if they could be read at all. They were all Xerox copies of various reports. Most were police reports of burglaries which listed items taken. There is also a 23-page transcript of a taped interview between Paul Gary Russell and Deputy Sheriff Don Bernall. A summary of another interview with Russell appears with an explanation that the tape malfunctioned. Several unsigned notes are xeroxed and attached; no written explanation appears for their inclusion. Several letters from insurance companies are reproduced. Copies of internal sheriff department memos also are included. While it is not clear, it appears that those items formed a part of the police reports or the police file on those reported burglaries.[1]

Several of the documents, including at least one report, identified in testimony as report No. 11-587-78, are illegible. This court simply cannot read them. One of the witnesses explained the report in question (like some other reports) came from another county and was "a very bad, if not illegible copy." By the time of the preliminary examination hearing, the deputy was able to obtain the originals which he could read.

Portions of the affidavits, we have noted, were reports based on statements by Russell. The trial court ruled that Russell was a police agent. Russell had been in jail and when released was instructed to conduct confirmatory searches. Russell testified that he went to the premises as part of a bargain with a deputy sheriff. Since Russell was a police agent, the trial court ordered struck from the supporting affidavit all information on any reference to observations made by Russell on March

---

[1]Some confusion exists in the record as to which reports formed a part of the affidavit. The copying and attaching of so many papers appear to have created some confusion for the trial court since the papers apparently were later dismantled. An affidavit which specifically identified and incorporated the exhibits would have helped the magistrate and the trial court in their review.

4 and 6, 1979, while present in petitioner's home. The evidence was not suppressed. The trial court found the remaining portions of the affidavit sufficient to sustain the search warrant.

## II

■ In a statement described by the United States Supreme Court as "The classic statement of the policy underlying the warrant requirement of the Fourth Amendment" (*Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 449 [29 L.Ed.2d 564, 573, 91 S.Ct. 2002]), Mr. Justice Jackson wrote: "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. . . . When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." (*Johnson* v. *United States* (1947) 333 U.S. 10, 14 [92 L.Ed. 436, 440, 68 S.Ct. 367]; fns. omitted.) The purpose of the affidavits is to enable the magistrate to determine whether the "probable cause" required to support the warrant exists. "The Commissioner [magistrate] must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime." (*Giordenello* v. *United States* (1958) 357 U.S. 480, 486 [2 L.Ed.2d 1503, 1509, 78 S.Ct. 1245].)[2]

■ Have those constitutional requisites been met? We hold they have not. The documents presented and the actions of the magistrate

---

[2]The most famous of the Declarations of Rights found in the original state Constitution, which predate the United States Constitution, was adopted by the Virginia Convention in 1776. Paragraph 10 of the 16-paragraph declaration reads as follows: "That general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offence is not particularly described and supported by evidence, are grievous and oppressed, and ought not to be granted." (1 Commager, Documents of American History To 1898 (9th ed. 1971) The Virginia Bill of Rights. June 12, 1976, Doc. No. 67, pp. 103, 104.)

respecting those documents, without more, convince us that the independent judgment, so essential a part of the warrant procedure, was not exercised by the magistrate.

First, it is impossible for the magistrate to exercise that required neutral judicial supervision when portions of the affidavits are illegible. ■ The role of the magistrate is not merely a "necessary check point" but a constitutional role which must be exercised (see *Aguilar* v. *Texas* (1964) 378 U.S. 108, 110 [12 L.Ed.2d 723, 725, 84 S.Ct. 1509]; *People* v. *Escamilla* (1976) 65 Cal.App.3d 558, 562 [135 Cal.Rptr. 446].) ■ The attachments were part of the affidavits; Xerox machines cannot be permitted to weaken the Constitution. We may fairly conclude that such illegible declaration or exhibits cannot form the basis for a probable cause ruling.

■ Second, the magistrate must examine the entire affidavit. The magistrate's decision is one which must be made before the search. It is the magistrate's function to determine in advance of the search whether probable cause exists; thus all the writings offered in support must be read. Oral statements must be reduced to writing. (Pen. Code, § 1526.) The determination of whether probable cause exists necessarily involves a full review of the evidence presented. (*People* v. *Escamilla, supra*, 65 Cal.App.3d 558, 562.) ■ Aside from those portions which are illegible, the magistrate testified that he read some of the reports which formed part of the affidavit and not others. No record was made as to which portions of the affidavit were read. Manifestly, those which were not read cannot provide probable cause. On this record we cannot tell which were or were not read.

Third, the judicial review of the magistrate's determination which the defendant has an absolute right to seek (*People* v. *Ruster* (1976) 16 Cal.3d 690, 702 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269]), was rendered nugatory. We, as an appellate court, must look to the affidavits to determine sufficiency of the evidence, but such a review is based on the assumption, contrary to this record, that all affidavits were considered. (See *Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 873 [34 Cal.Rptr. 251].) The constitutional requirements, while placed on the magistrate because of the review nature of his or her role, also permits ready appellate review of the magistrate's action. Every item considered must be in writing. How may the trial court or we on appeal, other than by guesswork, determine whether the magistrate met the constitutional standard of reasonableness (*People* v.

*Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621]), without a record which tells us what was considered and what was not? Normally, on appeal we look only to the affidavits (and sworn oral statement) and may not speculate. (*Dunn* v. *Municipal Court, supra,* 220 Cal.App.2d at p. 874.) The record, however, tells us we may not rely on the affidavits, but it fails to tell us upon what portions we may rely.

The architects of our national and state Constitutions provide all residents, good or evil and loved or unloved, the protection of their homes. That protection is made a firm and meaningful one by the requirement that a magistrate stand between them and the police, no matter how well intentioned and reasonable they might be, before a search can take place. It is a procedural protection which holds the key to this most dear of personal protections—peace in one's own home, the modern day hut or castle. Because the basic right depends on a procedural device, that procedure must be strictly adhered to. ■ "'...[E]very constitutional and statutory requirement must be fully met, including all formalities required by statute, before a valid search warrant may issue.'" (*Bowyer* v. *Superior Court* (1974) 37 Cal.App.3d 151, 164 [111 Cal.Rptr. 628, 112 Cal.Rptr. 266].) Without the procedure, the substance falls.

Let a peremptory writ issue ordering the superior court to suppress the evidence found in the two residences we have found were unconstitutionally searched.

Blease, J., concurred.

**EVANS, Acting P. J.**—I dissent.

The majority, in a seemingly over-zealous quest to find some constitutional infirmity in the warrant process, seize upon the magistrate's admitted failure to read every word of each police arrest report incorporated in the supporting affidavits, as a defect of sufficient magnitude to support their decision to invalidate the search warrants.

Admittedly, copies of some of the police report attachments were difficult to read if not totally illegible; however, it is clear that the vast majority of them, particularly those relied upon by the magistrate, were easily readable.

The statement by the majority that, "The attachments were part of the affidavits; Xerox machines cannot be permitted to weaken the Constitution. We may fairly conclude that such illegible declaration or exhibits cannot form the basis for a probable cause ruling" appears ludicrous when considered in the context of the entire record. It does not appear in any way from the record that the illegible "Xerox machine" copies were the basis of the magistrate's determination of probable cause. To assume so requires an indulgence in judicial imagination.

I find the following facts from the record to be pertinent. At approximately 7 p.m. on March 9, 1979, Deputy District Attorney Holmer, who helped prepare the warrants, went to the magistrate's home with Deputy Sheriffs Bernall and Santalina. Holmer testified that he explained to the magistrate that the same affidavit supported both warrants, and that the magistrate was presented with all 155 pages of police reports. He testified that the magistrate deliberately reviewed the entire affidavit, including the incorporated police reports. He further testified that neither he nor the officers made any substantive statements to the magistrate beyond the content of the affidavit. He estimated the magistrate spent 20 minutes to half an hour reviewing the affidavit.

Deputy Sheriff Santalina testified the deputy district attorney pointed out portions of the police reports to the magistrate, who then spent approximately one-half hour reviewing them.

The magistrate stated that although he did not read all of the police reports, he did examine "substantial portions" of them in considering whether or not to issue the warrant. He understood an informant was criminally involved in the case and recalled specifically examining the reports for independent corroboration of the informant's statements as well as to match up stolen property identified in the reports with property described by the informant as located at the residence. He estimated his review of the affidavit took "from 45 minutes upwards."

It is agreed that a magistrate must be neutral and detached and must exercise an informed and deliberate judgment in ascertaining whether the affidavits presented in support of a search warrant provide probable cause to justify the issuance of the warrant. (*People* v. *Escamilla* (1976) 65 Cal.App.3d 558, 562-563 [135 Cal.Rptr. 446].) I believe that this test was met.

My review of the record fails to reveal any indication that the magistrate was not neutral and detached, nor does it show that any substantive information beyond that contained in the affidavit was presented to him. I find substantial evidence that the magistrate complied with his duty to exercise an informed and deliberate judgment in ascertaining the existence of probable cause to support the issuance of the warrants.

The attack upon the warrants has not been directed to the adequacy of the substance of the legible attachments which accompanied the affidavits, nor has the majority opinion found such a deficiency. Instead, we are told that because a magistrate fails to read illegible "Xerox" copies of some of the police arrest reports, the defendant's fourth amendment rights have been impinged.

Such conclusion is a base example of judicial reverence for form over substance.

I would deny the writ.