[No. G034132. Fourth Dist., Div. Three. Aug. 26, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT MENCHACA MARTINEZ, Defendant and Appellant.

COUNSEL

Linn Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Erika Hiramatsu and Heather F. Wells, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RYLAARSDAM, Acting P. J.**—After the trial court denied his motions to traverse and quash the search warrant and to suppress evidence, defendant Robert Menchaca Martinez pleaded guilty to possession of a controlled substance (methadone), being under the influence of a controlled substance, possession of narcotics paraphernalia, and possession of a hypodermic syringe. He also admitted four prior strike convictions. After striking three of the prior convictions, the court sentenced defendant to a term of 16 months in state prison. Defendant contends the trial court improperly denied his motion to unseal a confidential attachment to the search warrant affidavit after reviewing the attachment in an in camera hearing and that the search warrant was not supported by probable cause. He further argues the officers, in executing the warrant, failed to comply with the knock-and-notice requirement of Penal Code section 1531, thereby rendering the search unreasonable under the Fourth Amendment. While our task in this case was complicated by the erroneous return of excised search warrant material to the police, we find no reversible error.

FACTS

Investigator Pham prepared the affidavit used to secure the search warrant that led to defendant's arrest. After discussing his training and experience in conducting narcotics investigations, Pham set forth information relating to defendant's prior conviction in 1998 for possession of a controlled substance and his recent arrest for possession of a controlled substance for sale following a narcotics investigation.

Pham described two events observed during a surveillance of defendant at his residence: "On 01-10-03, at about 1655 hours, . . . I observed a white Mitsubishi truck drive into the driveway. An unknown identified subject wearing dark clothing made contact with [defendant] who was wearing a white and dark colored checkered [P]endleton, dark colored pants, and a dark colored baseball cap. The subject made contact with [defendant] in front of

the garage and left about two minutes later. [Defendant] went back into the house. Based on my training and experience, buyers and sellers often meet only briefly to make the narcotic exchange and leave. [¶] At about 1735 hours, I observed a white Chevy Van stopped along the curb in front of the residence. [Defendant] approached the passenger side of the van. The van drove away about 10-15 seconds after making contact with [defendant]. [Defendant] went back into the house. Based on my training and experience, buyers and sellers often meet only briefly to make the narcotic exchange and leave. [¶] Based on my training and experience, it is my opinion that the above mentioned activity is consistent with narcotic sales."

Pham also requested that a confidential attachment be ordered sealed pursuant to Evidence Code section 1041 "to protect the identity of any confidential informant(s) . . . ." The magistrate signed the search warrant on January 15 and it was executed the next morning. Among the items recovered from the detached garage wherein defendant had been residing were 17 methadone pills, a number of new and used hypodermic syringes, and several hundred dollars in cash.

Defendant subsequently moved to unseal the confidential attachment to the warrant affidavit and to traverse and quash the warrant. The trial court determined defendant's moving papers were sufficient to justify an in camera hearing and indicated it would conduct the hearing in chambers with the deputy district attorney and Pham. The record of the in camera hearing was ordered sealed. Thereafter the trial court denied the motion to unseal the confidential attachment to the warrant affidavit. It also denied the motion to traverse and quash the warrant after finding probable cause existed for the search under the totality of the circumstances set forth in the affidavit.

The court then conducted a hearing on defendant's motion to suppress evidence seized during the search based on the officers' alleged failure to comply with the knock-and-notice requirement of Penal Code section 1531. The following facts are derived from testimony received at the hearing.

The search warrant authorized the officers to enter a main residence and a detached garage. The officers executing the warrant did not know which building defendant lived in. Officer Gutierrez was responsible for knocking on the door of the main residence and announcing the officers' presence and purpose. Shortly after 7:00 a.m., Gutierrez "pounded on the door with [his] fists" and announced "Santa Ana Police Department. We have a search warrant. Open the door." He waited three or four seconds and then "pounded on the door several times" and announced their presence again. Hearing no response, Gutierrez repeated the process a third time. The officers waited another 10 to 15 seconds, and when no one answered, the police broke down

the door and entered the residence. Gutierrez estimated that the time between the first knock and notice and the forced entry was about 30 to 35 seconds.

Pham was with the group of officers who searched the detached garage. Officer Carranza knocked on the door to the garage, gave notice of the officers' presence, and demanded entry pursuant to the search warrant. The first time, he made the announcement in English. He gave the second announcement in Spanish after waiting for 15 to 20 seconds. Hearing no response, the police forced entry into the garage. Pham estimated that the total time from the first knock and notice to the forced entry was 30 seconds, but on cross-examination he conceded the time span could have been as short as 25 seconds or as long as 35 seconds. Once the officers entered the converted garage, they saw defendant sitting up on his bed. At the conclusion of the hearing the court denied the motion to suppress, holding that the officers substantially complied with Penal Code section 1531.

## DISCUSSION

*The Trial Court Had a Duty to Maintain the Confidential Attachment in Its Records.*

Our determination of whether the search warrant was supported by probable cause and whether the confidential attachment to the warrant affidavit was properly ordered sealed required us to review the confidential attachment. It became evident, however, after reviewing the sealed transcript of the in camera hearing, that the confidential attachment was not part of the record on appeal. Rather, the record showed the document was brought to the in camera hearing by Investigator Pham and returned to his custody at the conclusion of the hearing. Subsequent inquiries to the superior court confirmed the confidential attachment was not in the superior court's files.

We ordered the trial court to retrieve the confidential attachment, authenticate it, unseal it, make a copy of it, reseal it, and transmit the copy to this court in a sealed condition. The trial court did so, but it did not transmit any order stating it had authenticated the sealed document. We therefore issued a second order for the trial court to provide us with a statement indicating whether it was able to authenticate the confidential attachment as the one it had reviewed during the in camera hearing held on March 12, 2004. The trial court complied by preparing a sealed reporter's transcript of an in camera hearing held on June 10, 2005, wherein it reviewed and authenticated the document at issue.

We have no reason to doubt the authenticity of the confidential attachment forwarded to us by the trial court. But we question the trial court's decision to

allow a law enforcement officer to retain a sealed document in his or her possession, particularly once the court has reviewed the document in camera in ruling on a motion to traverse and quash the search warrant. The trial court should have filed the confidential attachment in a sealed condition along with the search warrant and related affidavit following the in camera hearing.

■ Government Code section 69846 mandates the clerk of the superior court to "safely keep or dispose of according to law all papers and records filed or deposited in any action or proceeding before the court." And the Supreme Court has expressly stated, "In all instances, a sealed transcript of the in camera proceedings, *and any other sealed or excised materials, should be retained in the record* along with the public portions of the search warrant application for possible appellate review. [Citations.]" (*People v. Hobbs* (1994) 7 Cal.4th 948, 975 [30 Cal.Rptr.2d 651, 873 P.2d 1246] (*Hobbs*), italics added.) Had the trial court complied with this procedural requirement, the extra time and expense it took to handle this appeal would have been avoided. But more importantly, future compliance will ensure the integrity of sealed documents used to support search warrants.

*The Court Properly Denied the Motion to Unseal the Confidential Attachment.*

Defendant requests that we review the record of the in camera proceeding to determine whether the trial court improperly denied his motion to unseal the confidential attachment to the warrant affidavit. He contends the affidavit, absent the information disclosed by any confidential informants, is insufficient to show probable cause for the search.

■ It is settled that "all or any part of a search warrant affidavit may be sealed if necessary to implement the privilege [under Evidence Code section 1041] and protect the identity of a confidential informant." (*Hobbs, supra,* 7 Cal.4th at p. 971; see Evid. Code, § 1042, subd. (b).) Consequently, courts are not required to disclose "the identity of an informant who has supplied probable cause for the issuance of a search warrant . . . where such disclosure is sought merely to aid in attacking probable cause. [Citations.]" (*Hobbs, supra,* 7 Cal.4th at p. 959, italics omitted.) Courts may further refuse to disclose the content of an informant's statements to the extent such " 'disclosure . . . would tend to disclose the identity of the informer . . . .' " (*Id.* at p. 962.)

■ In cases where all or part of a search warrant affidavit has been sealed and the defendant moves to traverse and quash the warrant, the court is required to conduct an in camera hearing to determine if "sufficient grounds exist for maintaining the confidentiality of the informant's identity" and if

"the affidavit or any major portion thereof is properly sealed, i.e., whether the extent of the sealing is necessary to avoid revealing the informant's identity." (*Hobbs, supra,* 7 Cal.4th at p. 972, fn. omitted.) Absent a waiver by the prosecutor, the defendant and his or her attorney may not attend the in camera proceeding. (*Id.* at p. 973.)

Because the defendant will be ignorant of the content of the sealed portions of the affidavit, the court "must take it upon itself both to examine the affidavit for possible inconsistencies or insufficiencies regarding the showing of probable cause, and inform the prosecution of the materials or witnesses it requires. The materials will invariably include such items as relevant police reports and other information regarding the informant and the informant's reliability." (*Hobbs, supra,* 7 Cal.4th at p. 973.)

■ If the court determines the affidavit, or a portion thereof, was properly sealed, it must next determine if there is any merit to the defendant's motion to traverse based on "the public and sealed portions of the search warrant affidavit, including any testimony offered at the in camera hearing." (*Hobbs, supra,* 7 Cal.4th at p. 974.) If not, "the court should simply report this conclusion to the defendant and enter an order denying the motion to traverse." (*Ibid.*) By the same token, if the defendant has also moved to quash the warrant, "the court should proceed to determine whether, under the 'totality of the circumstances' presented in the search warrant affidavit and the oral testimony, if any, presented to the magistrate, there was 'a fair probability' that contraband or evidence of a crime would be found in the place searched . . . ." (*Id.* at p. 975.) In the event the court concludes probable cause existed to issue the search warrant, it should "report this conclusion to the defendant and enter an order denying the motion to quash. [Citations.]" (*Ibid.*)

The trial court followed the foregoing procedures by conducting an in camera hearing and reviewing the confidential attachment to the warrant affidavit. Both the deputy district attorney and Pham testified during the in camera hearing. The trial court determined the confidential attachment was properly ordered sealed and that disclosure of its contents would tend to reveal the identity of the confidential informant or informants. Having examined the public and sealed portions of the affidavit, it determined there were no material misstatements or omissions and that under the totality of the circumstances probable cause existed to issue the search warrant. The trial court reported its findings to defendant and denied the motion to traverse and quash the warrant.

■ Our independent review of the record and sealed materials shows there is no reasonable possibility defendant could prevail on his motion. We

likewise agree with the trial court that information contained in the confidential attachment, if disclosed, would tend to reveal the identity of the confidential informant or informants. Thus, the confidential attachment was properly ordered sealed, and the court correctly denied defendant's motions. (*Hobbs, supra,* 7 Cal.4th at p. 977.) Further, under the totality of the circumstances there was probable cause to issue the search warrant. (*People v. Mikesell* (1996) 46 Cal.App.4th 1711, 1716 [54 Cal.Rptr.2d 708].)

Citing *Alvarado v. Superior Court* (2000) 23 Cal.4th 1121 [99 Cal.Rptr.2d 149, 5 P.3d 203] and *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354], defendant argues the application of Evidence Code section 1041 implicates his confrontation rights under the Sixth Amendment insofar as a confidential informant's statement could be falsely used in a hearing on a motion to suppress. His reliance on these cases is misplaced, as both involved evidence received at trial, not in a hearing on a motion to suppress.

■ As discussed in *Hobbs* in the context of a due process claim, a pretrial hearing on a motion to suppress is fundamentally different from " ' " 'the trial of the criminal charges itself. There, the need for a truthful verdict outweighs society's need for the informer privilege. Here, however, the accused seeks to avoid the truth. The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel [law] enforcement officers to respect the constitutional security of all of us under the Fourth Amendment . . . . If the motion to suppress is denied, defendant will still be judged upon the untarnished truth.' " [Citations.]' [Citation.]" (*Hobbs, supra,* 7 Cal.4th at p. 968.)

*The Officers Substantially Complied With the Knock-notice Requirement.*

Defendant contends the officers who executed the search warrant failed to wait a sufficient amount of time for a response after knocking and announcing their presence and purpose and that the search was therefore unreasonable under the Fourth Amendment. We disagree.

■ In *Wilson v. Arkansas* (1995) 514 U.S. 927, 929 [131 L.Ed.2d 976, 115 S.Ct. 1914], the Supreme Court held that the "common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment." That principle has long been codified under Penal Code section 1531, which states: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

■ Under California law, searches involving forced entry pursuant to a warrant generally are upheld if it is found the officers substantially complied with Penal Code section 1531. " ' "Substantial compliance means ' *"actual* compliance in respect to the substance essential to every reasonable objective of the statute," as distinguished from "mere technical imperfections of form." ' " [Citation.] The essential inquiry is whether under the circumstances the policies underlying the knock-notice requirements were served. [Citation.]' [Citation.]" (*People v. Hoag* (2000) 83 Cal.App.4th 1198, 1208 [100 Cal.Rptr.2d 556].) In *Hoag*, the court stated, "The concept of substantial compliance . . . is consistent with general principles of Fourth Amendment analysis." (*Id.* at p. 1209.) We agree with this statement insofar as section 1531 embodies the common law "knock and announce" principle.

Past cases have looked to a variety of circumstances in determining whether the number of seconds between the knock and notice and the forced entry was reasonable. In one case the court determined, "Twenty seconds would clearly be too short a wait for a door-to-door salesman or at a house of gargantuan proportions or during a time normally associated with sleeping . . . ." (*People v. Elder* (1976) 63 Cal.App.3d 731, 739 [134 Cal.Rptr. 212], overruled on another ground in *People v. Chapman* (1984) 36 Cal.3d 98, 109–111, fn. 8 [201 Cal.Rptr. 628, 679 P.2d 62].) But there, the officers were investigating a bookmaking operation and had called the residence and placed a bet before executing the warrant. The officers then knocked on the door, announced their purpose and presence, and waited 20 seconds before entering the residence. The court found the officers had fully complied with the statutory knock-notice requirement, noting "[s]ilence for 20 seconds where it is known that someone is within the residence suggests that no one intends to answer the door. Twenty seconds of silence may be sufficient in one case and insufficient in another." (*People v. Elder, supra,* 63 Cal.App.3d at p. 739.)

In *People v. Trujillo* (1990) 217 Cal.App.3d 1219 [266 Cal.Rptr. 473], the court found that an 18-second delay constituted substantial compliance even though the case was close. There, the warrant was executed at 7:45 a.m. Officers who had been watching the apartment for over an hour had seen a light go on earlier and heard movement inside the residence after knocking and announcing their presence. But these facts alone did not persuade the court.

"It is impossible to calculate whether an 18-second delay was sufficient to allow the occupants to respond to a knock at the door without knowing the size and layout of the apartment. . . . [A]ssuming an average-sized apartment, we question whether such a brief delay is sufficient to allow an occupant to answer a knock at the door unless the occupant is otherwise uninvolved and

waiting for the knock. The generic 'movement' heard by the officer, without more, is no manifestation of a refusal of entry. As the magistrate said, the sound 'could be a dog.' Even assuming the officers were further aware that a light had been briefly turned on and off nearly an hour before their entry, this fact does not support a conclusion that entry had been refused. If anything, it may suggest, as defendant asserts, that the occupant had gone back to bed." (*People v. Trujillo, supra,* 217 Cal.App.3d at pp. 1226–1227.) Nevertheless, balancing the occupant's privacy interests with the officers' authority to conduct the search by virtue of the search warrant, the court concluded the purposes of the knock-and-notice requirement had been met. (*Id.* at pp. 1227–1228.)

But our analysis of the facts here turns on more than defendant's privacy interest, the size of the buildings entered, or the seconds needed for the occupants to respond once the officers knocked and gave notice of their presence and purpose. Rather, the validity of the forced entry in this case is primarily determined by the purpose of the search warrant and the nature of the evidence being sought.

In *United States v. Banks* (2003) 540 U.S. 31 [157 L.Ed.2d 343, 124 S.Ct. 521], the Supreme Court stated "the facts known to the police are what count in judging reasonable waiting time . . . ." (*Id.* at p. 39.) There, the officers suspected the defendant of selling cocaine from his home. Rather than consider the time it might take a person to answer the door in the context of the size of the home, the court determined "what matters is the opportunity to get rid of cocaine, which a prudent dealer will keep near a commode or kitchen sink. The significant circumstances include the arrival of the police during the day, when anyone inside would probably have been up and around, and the sufficiency of 15 to 20 seconds for getting to the bathroom or the kitchen to start flushing cocaine down the drain." (*Id.* at p. 40.)

The court concluded that the fact the search involved narcotics created an exigent circumstance after the officers had knocked and announced their presence and purpose. "[C]ircumstances are exigent because a pusher may be near the point of putting his drugs beyond reach, [and] it is imminent disposal, not travel time to the entrance, that governs when the police may reasonably enter; since the bathroom and kitchen are usually in the interior of a dwelling, not the front hall, there is no reason generally to peg the travel time to the location of the door, and no reliable basis for giving the proprietor of a mansion a longer wait than the resident of a bungalow . . . . And 15 to 20 seconds does not seem an unrealistic guess about the time someone would need to get in a position to rid his quarters of cocaine." (*United States v. Banks, supra,* 540 U.S. at p. 40.) Thus, because the situation ripened into exigency after the officers knocked and announced their presence, the Fourth

Amendment requirement of reasonableness had been satisfied, "even without refusal of admittance." (*Id.* at p. 43.)

The same analysis applies here. The search warrant was based on a reasonable suspicion that defendant had been selling narcotics. Only a daytime search had been authorized. Even at 7:00 a.m., the officers could reasonably anticipate that any occupants would be awake. The 25 to 35 seconds the officers waited before entering the detached garage and the 30 seconds they waited before entering the house was ample time in light of *Banks*. In short, no Fourth Amendment violation occurred.

## DISPOSITION

The judgment is affirmed.

Bedsworth, J., and Fybel, J., concurred.