52 Cal.Rptr.3d 799 (2006)
146 Cal.App.4th 277
The PEOPLE, Plaintiff and Respondent,
v.
Anthony Andrew GALLAND, Defendant and Appellant.
No. G034189.
Court of Appeal of California, Fourth District, Division Three.
December 28, 2006.
*800 Jackie Menaster, Los Angeles, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil Gonzalez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
MOORE, J.
In August 2002, Anthony Andrew Galland pleaded guilty to drug charges after the trial court denied his motions to quash and traverse a search warrant and to suppress evidence seized during the execution of that warrant. In People v. Galland (2004) 116 Cal.App.4th 489, 10 Cal.Rptr.3d 350 (Galland), this court reversed the trial court's order denying these motions and conditionally reversed the judgment to allow the court to conduct in camera review proceedings in accordance with the guidelines set forth in People v. Hobbs (1994) 7 Cal.4th 948, 30 Cal.Rptr.2d 651, 873 P.2d 1246 (Hobbs ). On June 29, 2004, the trial court conducted an in camera review of the warrant in accordance with this court's decision and again denied Galland's motions to quash and traverse a search warrant and to suppress evidence.
In Galland's appeal from the trial court's second order denying his motions to quash and traverse a search warrant and to suppress evidence, he contends the court did not follow the procedure set forth in Hobbs, supra, 7 Cal.4th 948, 30 Cal. Rptr.2d 651, 873 P.2d 1246, erroneously determined the police officers who served the warrant complied with statutory knock-notice requirements (Pen.Code, § 1531), and failed to produce a correct abstract of judgment. (All further statutory references are to the Penal Code unless otherwise noted.) Galland further argues the trial court denied him protection from *801 unreasonable search and seizure as guaranteed by the Fourth and Fourteenth Amendments to the federal Constitution, article I, section 13 of the California Constitution, and California's statutory scheme governing the issuance and execution of search warrants. For reasons we discuss more fully below, this last contention has merit.
The appellate record discloses the original search warrant affidavit was somehow divided into three sections. One section was ordered sealed and filed with the superior court when the police officer affiant filed the return. The second section was ordered sealed and retained by this police officer for storage at the Buena Park Police Department, which the department later destroyed. The third was discovered in a separate sealed envelope during proceedings in the trial court held pursuant to this court's order directing the superior court to authenticate, if possible, a facsimile purported to be the now destroyed second section. The record fails to disclose the origin of the separate sealed envelope.
From the issuance of the search warrant to its review and authentification of documents purportedly supporting the issuance of the warrant, the trial court failed to preserve a record adequate for appellate review. We have no confidence in the authenticity of the warrant affidavit included in the appellate record, or that the documents comprising the affidavit are the same documents the issuing magistrate actually reviewed. The trial court's failure to maintain a record adequate for appellate review violated state and federal Constitutional provisions, state statutory provisions governing search warrants, and state statutory provisions governing the retention and destruction of court documents. For reasons discussed below, the court's failure to perform this basic obligation deprived Galland of due process of law. Consequently, the judgment is reversed.

I

FACTS
The facts of the underlying conviction are not relevant to the issues on appeal. The relevant facts are in the procedural history of the case and what has transpired since our earlier opinion.
On August 9, 2001, Judge Daniel B. McNerney issued a search warrant for Galland's home, vehicle, and person. The warrant included Detective David Hankins' affidavit of probable cause and was executed during the evening hours of August 9. On August 17, Hankins appeared before Judge James P. Marion with the original search warrant, warrant affidavit, return, and property report. In another affidavit, Hankins requested an order sealing these documents to protect the identity of a confidential informant, relying on the holding in Hobbs, supra, 7 Cal.4th 948, 30 Cal. Rptr.2d 651, 873 P.2d 1246, and that the sealed portion of the warrant be secured in the Buena Park Police Department property room. Judge Marion signed the order.
Hankins filed the sealed search warrant, return, and property report with the clerk of the superior court, but he included only part of the original warrant affidavit. Hankins retained a portion of the sealed original warrant affidavit and transported this sealed document to the Buena Park Police Department for storage in its property room. The partial search warrant affidavit filed with the court contained Hankins' training and experience, but did not state the basis for his belief a search of Galland's home, person, and property would reveal evidence of a crime. The portion Hankins retained held the facts necessary to establish probable cause for *802 the search. Sometime later, for reasons not disclosed in the record, the court ordered the search warrant, partial affidavit, return and property report in its possession to be unsealed and available to Galland's attorney.
In June 2002, Galland filed motions to quash and traverse the search warrant and for the suppression of evidence seized as a result of the search. He challenged the validity of the warrant on numerous grounds, including the fact that Hankins had failed to file the complete, original affidavit or a copy in the court file. Galland requested the trial court conduct an in camera review of entire warrant affidavit to determine whether it contained probable cause and if revealing any of the sealed affidavit Hankins retained could be released without jeopardizing the identity of the confidential informant. The prosecution opposed the motion, arguing no legal authority required the issuing magistrate to retain the original warrant affidavit while the search warrant was executed and, in the alternative, that suppression of the evidence would not be the proper remedy assuming a violation of proper procedure.
On August 2, 2002, Judge Robert R. Fitzgerald held an evidentiary hearing on Galland's motions. Galland orally renewed his request for an in camera review of the sealed portion of the warrant affidavit. Judge Fitzgerald did not rule on defendant's request for in camera review, but proceeded to conduct an evidentiary hearing on a knock-notice issue raised by the defense. At the conclusion of the evidentiary hearing, Judge Fitzgerald ruled as follows: "Discrepancy in the testimony is resolved in favor of law enforcement as opposed to a convicted criminal defendant in the same case. [¶] In that regard the motion in its entirety, unless there's other argument shall be denied. And that concludes our 1538.5." Defense counsel again requested an in camera review of the warrant affidavit, or a continuance to file the appropriate discovery motion. This request was denied. Galland pleaded guilty 17 days later and filed an appeal from the court's order denying his motions to quash and traverse the warrant and to suppress evidence, and his request to file a discovery motion.
In Galland, supra, 116 Cal.App.4th 489, 10 Cal.Rptr.3d 350, we held Judge Fitzgerald's denial of Galland's request for an in camera review of the entire warrant affidavit violated the procedure set forth in Hobbs, supra, 7 Cal.4th 948, 30 Cal. Rptr.2d 651, 873 P.2d 1246. (Galland, supra, 116 Cal.App.4th at pp. 492-494, 10 Cal.Rptr.3d 350.) At the time, we noted a portion of the warrant affidavit, the portion Hankins retained, was not part of the appellate record and from this omission we concluded Judge Fitzgerald had not reviewed the document. (Id. at p. 494, 10 Cal.Rptr.3d 350.) This court reversed the trial court's orders denying Galland's motions and conditionally reversed the judgment to allow the trial court to conduct an in camera review of the search warrant affidavit and to prepare a proper record of those proceedings. (Ibid.)
On June 29, 2004, Judge Fitzgerald conducted a hearing pursuant to this court's decision. By stipulation the parties agreed Hankins, now an investigator for the District Attorney's Office, had Judge Marion's order sealing a portion of the search warrant affidavit and directing Hankins to retain this document in the Buena Park Police Department property room. They further agreed Hankins would testify if called as a witness that he had transported a portion of the original warrant affidavit for storage in the Buena Park Police Department property room, *803 had not altered or changed the original, and had brought the original affidavit to court for the June 29 hearing. The court accepted the parties' stipulation and proceeded in chambers with Hankins. During the in camera hearing, Judge Fitzgerald ordered copies of the original documents to be sealed and placed in the court file and the original sealed documents returned "to the law enforcement agent."
On the record, Judge Fitzgerald stated that based on his in camera review of the documents, a "conversation" with Hankins, and Hankins assurance that he had provided "the entirety of the package," the reasons for sealing the warrant affidavit remained and the defense was not entitled to any further information. Judge Fitzgerald again denied defendant's motion to quash and traverse the search warrant. Nothing in the record demonstrates Judge Fitzgerald separately considered defendant's motions for discovery or to suppress evidence. Pursuant to trial court order, a sealed reporter's transcript of the in camera review was prepared. However, the clerk's transcript; for the date of the in camera review did not include any sealed documents.
On July 8, 2004, defendant filed a timely notice of appeal from the trial court's denial of his section 1538.5 motion to suppress evidence. On February 28, 2005, this court received an affidavit from the clerk of the appellate division of the superior court. The clerk averred that the sealed portion of the search warrant, the part Hankins retained for storage at the Buena Park Police Department, was not in the court's file. The clerk further stated a sergeant from the Buena Park Police Department confirmed that the document had been "purged/destroyed." The Buena Park Police Department confirmed this information by letter dated March 2, 2005.
On March 9, 2004, we received a five-page facsimile from the Orange County District Attorney's Office, which included what appeared to be an unsigned version of the entire warrant affidavit. Because the document included information that might identify a confidential informant, we ordered the five-page facsimile sealed. A copy of the sealed facsimile was transmitted back to the superior court with directions. Specifically, we ordered the superior court to review the copy of the five-page facsimile we received on March 9 and determine if the five-page facsimile was the same document it reviewed in camera on June 29, 2004. If the superior court authenticated the five-page facsimile, we further ordered it to augment the appellate record and prepare a supplemental clerk's transcript.
On April 12, 2005, Judge Fitzgerald reviewed the five-page facsimile pursuant to our order. According to the clerk's transcript of the April 12 hearing, Judge Fitzgerald received an affidavit in support of a search warrant and found it was the same affidavit he had reviewed on June 29, 2004. He also discovered "another piece of paper that was in another sealed envelope." Without disclosing its contents, we are able to state this newly discovered piece of paper contains evidence relevant to the probable cause determination and likely to reveal the identity of a confidential informant if made public. Judge Fitzgerald then determined the newly discovered piece of paper had been inadvertently omitted from the superior court file, although he did not explain the origin of this document. Ultimately, Judge Fitzgerald ordered the court's file augmented with a supplemental clerk's transcript, "including this courts find [sic] and the sealed affidavit." We received the sealed clerk's transcript on April 14, 2005. There is no reporter's transcript for April 12, 2005.

*804 II

DISCUSSION
Galland argues the trial court failed to comply with the Hobbs procedure on remand from this court, thus violating his state and federal Constitutional rights to due process and effective assistance of counsel. Additionally, he contends the trial court erroneously found the officers who executed the warrant complied with section 1531's knock-notice provisions. Galland also asserts the decision in Hobbs, supra, 7 Cal.4th 948, 30 Cal.Rptr.2d 651, 873 P.2d 1246 is flawed in one respect. In Hobbs, the California Supreme Court held the entire search warrant could be ordered sealed upon a sufficient showing by the affiant that such an order was necessary to protect the identity of a confidential informant. Galland contends sealing the entire search warrant violates state and federal Constitutional provisions protecting his right to due process and to counsel. He also contends the search warrant issued in this case violates state and federal Constitutional provisions and California's statutory scheme governing the issuance and execution of search warrants because neither the issuing magistrate, nor the magistrate who accepted the return and ordered the warrant sealed, retained the original search warrant affidavit.
The Attorney General argues the trial court complied with the procedure set forth in Hobbs, supra, 7 Cal.4th 948, 30 Cal.Rptr.2d 651, 873 P.2d 1246, but even if it did not strictly comply with the Hobbs procedure, the appellate record is adequate for our independent review of the search warrant. In addition, the Attorney General asserts the police officers executing the warrant substantially complied with the statutory requirements. Further, the Attorney General contends, assuming the police officers did not substantially comply with section 1531, the violation of this statute does not necessarily trigger application of the exclusionary rule. The Attorney General also asserts Galland's attack on the holding in Hobbs, supra, 7 Cal.4th 948, 30 Cal.Rptr.2d 651, 873 P.2d 1246, is barred by principles of stare decisis, relying on Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455-461, 20 Cal.Rptr. 321, 369 P.2d 937. Finally, the Attorney General challenges Galland's interpretation of state and federal Constitutional provisions addressing search warrants and California's statutory scheme governing search warrants, contending the magistrates' failure to maintain the original warrant affidavit in the court file does not violate any particular constitutional right or statutory language, nor does it invalidate an otherwise facially valid search warrant.
We conclude the practice of allowing the affiant officer to retain a portion of a the original search warrant affidavit, a procedure initiated by Hankins and authorized by the magistrate, deprived Galland of an adequate appellate record and violated his right to due process of law. We find no authority for this practice in California's statutory scheme governing search warrants or the applicable state and federal Constitutional provisions. This case is an unprecedented example of what happens when the trial court ignores its duty to maintain inviolate the record of court proceedings in search warrant cases and a call for the court to assume this duty in the interests of justice.
Our state and federal Constitutions contain provisions for the protection of citizens from unreasonable search and seizure. The United States Constitution requires warrants to be issued "upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const. 4th *805 Amend.) The California Constitution contains a nearly identical clause. (Cal. Const., art. I, § 13.) Section 1523 et seq. contains the statutory scheme governing the issuance and execution of search warrants, providing specific procedures designed to protect the Constitutional right.
The prosecution relied on the common law privilege to refuse to disclose the identity of a confidential informant, codified in Evidence Code section 1041, subdivision (a), to request an order sealing not only the part of the warrant affidavit containing references likely to reveal a confidential informant's identity, but also to expand this protection to sealing the entire warrant. Evidence Code section 1042, subdivision (d), provides for in camera review of prosecution evidence that "would tend to disclose or which discloses the identity of the informant to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial." Pursuant to decisional law, the government may submit sealed or partially sealed warrant affidavits and obtain in camera review of these documents when a criminal defendant challenges the validity of a search warrant. (Hobbs, supra, 7 Cal.4th at pp. 962-963, 971, 30 Cal.Rptr.2d 651, 873 P.2d 1246.) As the Hobbs court stated, "It would be anomalous to conclude that a trial court, expressly deemed capable by our Legislature of making an in camera evaluation of a confidential informant's materiality as a witness to defendant's guilt or innocence on any claim of privilege under [Evidence Code] section 1040 et seq. (see § 1042, subd. (d)), could not likewise competently evaluate the necessity for sealing all or part of a search warrant affidavit on such a claim of privilege, take whatever further actions may be necessary to ensure full public disclosure of the remainder of the affidavit, and review all the relevant materials in camera to determine whether they will support defendant's challenges to the search warrant." (Hobbs, supra, 7 Cal.4th at p. 971, 30 Cal.Rptr.2d 651, 873 P.2d 1246.)
Court's have routinely relied on the in camera procedure described in the Hobbs decision to handle documents in criminal cases involving the use of confidential informants. (People v. Estrada (2003) 105 Cal.App.4th 783, 790-792, 129 Cal.Rptr.2d 589.) But the Hobbs court did not address the situation with which we are faced. We must determine whether a criminal defendant's constitutional or statutory rights preclude the affiant and his or her law enforcement agency from serving as the repository for court documents. We believe it doesthe right to due process of law prevents a law enforcement agency, or its officers, from retaining court documents simply because the agency prefers to maintain custody of documents relating to the identity of a confidential informant.
"The issuance of a warrant is a judicial act based on facts found by the magistrate. [Citation.]" (Dunn v. Municipal Court (1963) 220 Cal.App.2d 858, 869, 34 Cal.Rptr. 251.) From the moment a magistrate reads the search warrant and supporting affidavit, those documents become court documents. Government Code section 69846 states, "The clerk of the superior court shall safely keep or dispose of according to law all papers and records filed or deposited in any action or proceeding before the court." There is another provision of the same code describing the court record as "[a]U filed papers and documents in the case folder...." (Gov.Code, § 68151, subd. (a)(1).) The Government Code also addresses the destruction of court records specifically providing for a 10-year period for retention of search warrants except in capital cases. (Gov.Code, *806 § 68152, subd. (j)(18).) The Buena Park Police Department destroyed the original warrant affidavit long before the expiration of the 10-year retention period. In addition to other reasons stated in this opinion, the destruction of the affidavit in this case leads us to conclude that the trial court must assume responsibility for the collection and retention of all documents submitted in support of a search warrant.
Hankins' affidavit requesting an order sealing the search warrant, warrant affidavit, and return may have established sufficient cause to seal these documents under Hobbs, supra, 7 Cal.4th 948, 30 Cal. Rptr.2d 651, 873 P.2d 1246. However, nothing provided to this court explains or justifies his additional request to store these documents at the Buena Park Police Department. Essential to our system of justice is the right of a criminal defendant to an adequate appellate record. (Griffin v. Illinois (1956) 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891; People v. Arias (1996) 13 Cal.4th 92, 159, 51 Cal.Rptr.2d 770, 913 P.2d 980.) The building of an "adequate" record in cases involving a search warrant begins with the affiant's request for "an adjudication that probable cause exists for the search." (Dunn v. Municipal Court, supra, 220 Cal.App.2d at p. 869, 34 Cal. Rptr. 251.) The Hobbs decision assumed sealed affidavits would be maintained in the court's file following in camera proceedings. (People v. Hobbs, supra, 7 Cal.4th at p. 975, 30 Cal.Rptr.2d 651, 873 P.2d 1246.) As this case demonstrates, preservation of an adequate appellate record begins long before any in camera review of the warrant affidavit.
We question whether the parties' rights, the principles of effective appellate review, or the orderly administration of justice are served by an otherwise unnecessary authentification process simply because a law enforcement agency would prefer to maintain sealed warrants or warrant affidavits in its custody? We think not. As noted in Kaylor v. Superior Court (1980) 108 Cal. App.3d 451, 166 Cal.Rptr. 598, "We, as an appellate court, must look to the affidavits to determine sufficiency of the evidence, but such a review is based on the assumption ... that all affidavits were considered. [Citation.] The constitutional requirements, while placed on the magistrate because of the review nature of his or her role, also permits ready appellate review of the magistrate's action. Every item considered must be in writing. How may the trial court or we on appeal, other than by guesswork, determine whether the magistrate met the constitutional standard of reasonableness [citation], without a record which tells us what was considered and what was not?" (Id. at pp. 457-458, 166 Cal.Rptr. 598.)
The instant case presents a vivid example of why our courts are the preferred record keepers in judicial proceedings. Hankins presented a search warrant with supporting affidavit to the magistrate on August 9, 2001. In 2006, without the benefit of the original warrant affidavit or authenticated copy retained by the superior court, the parties seek this court's independent review of the magistrate's probable cause determination and the trial court's subsequent rulings on motions to suppress and for discovery. The documents included in the appellate record are too far attenuated from the magistrate's determination of probable cause to serve as a legitimate basis for any decision on the warrant's validity. The events subsequent to the magistrate's determination, Hankins retention of the crucial part of the warrant affidavit, the court's initial handling of the hearing on Galland's motions to disclose that document, and its subsequent and belated review, which yielded an entirely new page to add to it, provides no *807 reasonable belief in the authenticity of any of the documents not retained by the court after the filing of the return.
The most important part of a search warrant is the affidavit of probable cause. Without good reason, Hankins and his department retained the original affidavit, which no longer exists because of that agency's actions, and the appellate record supplies scant evidence on which this court can place its confidence in what is included in the record. How much more disturbing to the average citizen to discover the law enforcement agency involved in a criminal case retained the document that provided legal justification for a search of home, possessions, and person. Human nature precludes an unquestioning faith in a legal procedure that cannot guarantee objectivity and proper respect for important documents. Public confidence in our judicial system is founded on its ability to serve as a neutral player in the proceedings before it. Reliable record keeping is a basic component of public trust.
A search incident to a warrant is a governmental invasion of individual liberty and property. The abuse of that process led to the adoption of the Fourth Amendment and legislation prescribing mandatory procedures to be followed when a warrant is issued and thereby given judicial sanction. (Sgro v. United States (1932) 287 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260.) Essential to this protection is the state's ability to ensure the authenticity of the supporting affidavit of probable cause. Simply having any judicial officer review an affidavit of probable cause at any point in the criminal proceedings and then conclude the magistrate must have reviewed the same document provides no such assurance. When a police officer submits a written affidavit of probable cause, the issuing magistrate assumes the responsibility of ensuring probable cause existed for the search. It would be much easier to shoulder this responsibility if the magistrate ensures the original affidavit in its entirety is timely filed with the court clerk. We find support for our conclusion in the various statutes governing search warrants.
In addition to the grounds for issuing the warrant (§§ 1523-1527), the statutory scheme contains detailed provisions governing execution and post-execution procedures for search warrants, including the requirement to promptly return property if it later appears there was no probable cause (§§ 1528-1541). Section 1541 directs the magistrate to "annex the affidavit, or affidavits, the search warrant and return, and the inventory, and if he [or she] has not power to inquire into the offense in respect to which the warrant issued, he must at once file such warrant and return and such affidavit, or affidavits, and inventory with the clerk of the court having power to so inquire."
Galland argued section 1526, subdivision (a) carries with it an implied requirement the magistrate retain a copy of the search warrant and written affidavit. Section 1526, subdivision (a), provides, "The magistrate, before issuing the warrant, may examine on oath the person seeking the warrant and any witnesses the person may produce, and shall take his or her affidavit or their affidavits in writing, and cause the affidavit or affidavits to be subscribed by the party or parties making them." Galland contends the phrase "take his or her affidavit" means to physically take the affidavit from the affiant and place in the court file. But it is clear from the context of the statute whatever "take" means, it is solely for the purpose of ensuring the affidavit or affidavit is signed. On appeal, Galland contends the entire statutory scheme "read as a whole" requires the magistrate to retain the entire search warrant *808 affidavit when the warrant is issued or at the time the return is filed. We agree with this contention.
Our role in construing a statute is to "`ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] The words of the statute are the starting point. Words used in a statute ... should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature....' [Citation.]" (Wilcox v. Birtwhistle (1999) 21 Cal.4th 973, 977, 90 Cal.Rptr.2d 260, 987 P.2d 727.) The word we need to define in this statutory scheme is "affidavit."
An affidavit is "a sworn statement in writing made ... under oath or an affirmation before an authorized magistrate or officer." (Webster's 3d. New Internat. Diet. (1993) p. 35.) Hankins' sworn statement as presented to the magistrate contained information essential to find probable cause for the search. The fact the magistrate ordered Hankins' affidavit sealed pursuant to Hobbs, supra, 7 Cal.4th 948, 30 Cal.Rptr.2d 651, 873 P.2d 1246 and Evidence Code sections 1041 and 1042 does not convert a single affidavit into two or more separate documents. The common sense meaning of the word "affidavit" as used in sections 1523 et seq. is the entire affidavit. Whether the court finds reasonable cause to seal part of the affidavit or the entire affidavit makes no difference. The entire affidavit as reviewed by the magistrate is a court record subject to the pertinent Government Code sections. Any other interpretation of the state's statutory scheme is untenable and fraught with mischief.
The Attorney General argues that assuming a violation of the state or federal Constitutional or state statutory provisions requiring a search warrant to be based on an affidavit establishing probable cause, a violation of these provisions does not automatically trigger the exclusionary rule. True, since the passage of Proposition 8 and its amendment of article I, section 28, subdivision (d), application of the exclusionary rule as the remedy for an improper search or seizure is governed by the federal Constitution as interpreted by the United States Supreme Court. (In re Tyrell J. (1994) 8 Cal.4th 68, 76, 32 Cal. Rptr.2d 33, 876 P.2d 519, overruled on other grounds in In re Jamie P. (2006) 40 Cal.4th 128, 51 Cal.Rptr.3d 430, 146 P.3d 965.) In Hudson v. Michigan (2006) ___ U.S. ___, 126 S.Ct. 2159, 165 L.Ed.2d 56 (Hudson), the high court made clear suppression of evidence is the remedy of "last resort." (Id. at p. 2163.) However, the due process violation involved here did not occur in the execution of the warrant as it did in Hudson. In that case, the state conceded the police entry pursuant to a valid warrant violated knock-notice principles. (Ibid.) Galland challenges the validity of the warrant and we have concluded the appellate record is inadequate for effective review of the magistrate's decision or the trial court's subsequent rulings on the issue. Further, the deterrence benefits of applying the exclusionary rule outweigh its substantial social costs in this case. (Ibid.) As noted, Hankins' retention of the original warrant affidavit fomented an otherwise unnecessary post-execution authentification process. The danger posed by law enforcement retention of the original warrant affidavit is too great to consider the procedure "an inconsequential irregularity." (People v. Murgia (1974) 43 Cal.App.3d 85, 87, 117 Cal.Rptr. 564.)
We acknowledge cases where the court found the appellate record adequate notwithstanding law enforcement retention of the sealed portion of the original affidavit. But we have addressed and disapproved of this procedure before. (People v. Martinez *809 (2005) 132 Cal.App.4th 233, 33 Cal. Rptr.3d 328 (Martinez).) In Martinez, the defendant pleaded guilty to possession of a controlled substance, being under the influence of a controlled substance, possession of narcotics paraphernalia, and possession of a hypodermic syringe. He also admitted four prior "strike" convictions under the "Three Strikes" law. His plea followed unsuccessful pretrial motions to traverse and quash the search warrant that led to his arrest. Ultimately, this court found no reversible error. (Id. at p. 237, 33 Cal.Rptr.3d 328.) However, the court's discussion of the merits was preceded by a recitation of the difficulties it faced in obtaining an adequate appellate record.
"Our determination of whether the search warrant was supported by probable cause and whether the confidential attachment to the warrant affidavit was properly ordered sealed required us to review the confidential attachment. It became evident, however, after reviewing the sealed transcript of the in camera hearing, that the confidential attachment was not part of the record on appeal. Rather, the record showed the document was brought to the in camera hearing by Investigator Pham and returned to his custody at the conclusion of the hearing. Subsequent inquiries to the superior court confirmed the confidential attachment was not in the superior court's files. [¶] We ordered the trial court to retrieve the confidential attachment, authenticate it, unseal it, make a copy of it, reseal it, and transmit the copy to this court in a sealed condition. The trial court did so, but it did not transmit any order stating it had authenticated the sealed document. We therefore issued a second order for the trial court to provide us with a statement indicating whether it was able to authenticate the confidential attachment as the one it had reviewed during the in camera hearing held on March 12, 2004. The trial court complied by preparing a sealed reporter's transcript of an in camera hearing held on June 10, 2005, wherein it reviewed and authenticated the document at issue." (People v. Martinez, supra, 132 Cal.App.4th at p. 239, 33 Cal.Rptr.3d 328.)
The court further stated it had "no reason to doubt the authenticity of the confidential attachment," but questioned the trial court's decision to allow a law enforcement officer to retain a sealed document in his or her possession, particularly once the court has reviewed the document in camera in ruling on a motion to traverse and quash the search warrant. (People v. Martinez, supra, 132 Cal.App.4th at pp. 239, 33 Cal.Rptr.3d 328.) Instead, the trial court should have filed the confidential attachment in a sealed condition along with the search warrant and related affidavit following the in camera hearing. (Id. at p. 240, 33 Cal.Rptr.3d 328.) Here, there is good cause to doubt the authenticity of the confidential attachment in the appellate record. As stated before, at every procedural juncture the trial court's handling of the warrant affidavit invited error and confusion.
We are aware of the practical concerns generated by requiring the magistrate to ensure the entire search warrant affidavit, including any portion ordered sealed, be timely filed with the superior court clerk. Police officers frequently need to secure a search warrant in the middle of the night. Magistrates often live miles from the closest branch of the superior court. The press of work may prohibit the officer affiant from waiting at the courthouse door to file documents. Nevertheless, the entire warrant affidavit becomes a court document when it is presented to a magistrate in support of a search warrant. From then on, the document is a matter of public record to be treated like a public record. It is not evidence of guilt to be produced in a subsequent criminal trial and therefore *810 properly retained by the investigating law enforcement agency. Consequently, to avoid the constitutional and statutory violations that occurred here, the affiant officer must also ensure the entire warrant affidavit, including any portion ordered sealed by the magistrate, is filed with the clerk of the superior court at the officer's earliest opportunity.
Our resolution of the case makes discussion of Galland's remaining arguments unnecessary. Therefore, we render no decision on Galland's argument the trial court erred in finding compliance with knock-notice provisions of section 1531, nor do we address Galland's arguments concerning on the continuing validity of any part of the decision in Hobbs, supra, 7 Cal.4th 948, 30 Cal.Rptr.2d 651, 873 P.2d 1246. Galland's request to correct the abstract of judgment is moot because the trial court stated the correction had been made and we have no evidence to the contrary.
Because Galland was denied due process of law, the order denying his motions to quash and traverse the search warrant and to suppress evidence must be reversed. Galland's motion to unseal the warrant affidavit is denied.

III
The judgment is reversed and the matter is remanded to the trial court to allow Galland to withdraw his guilty plea. (People v. Saldana (2002) 101 Cal.App.4th 170, 176, 123 Cal.Rptr.2d 763.) Any evidence discovered as the result of the search warrant executed in this case is inadmissible against Galland at any trial or other hearing. (§ 1538.5, subd. (d).)
WE CONCUR: RYLAARSDAM, Acting P.J, and FYBEL, J.