Filed 12/7/15  P. v. Lizarraga CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a),'s prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESUS LIZARRAGA,<br><br>    Defendant and Appellant. | B258261<br><br>(Los Angeles County<br>Super. Ct. No. TA130084) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge.  Affirmed as modified.

Gail Harper, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, and Robert M. Snider, Deputy Attorney General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted defendant, Jesus Lizarraga, of second degree murder. (Pen. Code, § 187, subd. (a)[1].) The jury found defendant personally used a firearm and proximately caused the victim's death. (§ 12022.53, subds. (b)-(d).) The jury found not true a gang enhancement allegation under section 186.22, subdivision (b)(1)(C). The trial court sentenced defendant to 40 years to life in state prison. We modify the judgment and affirm it as modified.

# II. THE EVIDENCE

On July 22, 2013, defendant, a 17-year-old gang member, shot and killed Leonel Beltran, a rival gang member. Defendant was in rival gang territory visiting his mother. Defendant was carrying a loaded weapon. Defendant's gang affiliation was tattooed on his face, a sign of his commitment to his gang. Defendant was on the way to his mother's house prior to the shooting. A rival gang member tried to run defendant over with a truck. The shooting occurred shortly after defendant left his mother's home.

Defendant and a fellow gang member, Jessica Elizarrus, were near the intersection of Main Street and Imperial Highway. The intersection was an area disputed by defendant's gang and two others. There was intense rivalry among the gangs. Mr. Beltran, who was in a car, approached defendant from behind. According to defendant, someone in the car disrespected and threatened him by saying, "Fuck [defendant's gang]." Defendant walked towards the car which was behind him. Defendant took out his gun. Defendant shot Mr. Beltran three times. The bullets pierced Mr. Beltran's head and upper torso. His wounds were consistent with having been shot once from the front and twice from behind. Mr. Beltran's vehicle proceeded into a service station and

---

[1]     Further statutory references are to the Penal Code except where otherwise noted.

crashed into a telephone pole. Mr. Beltran was unarmed. The jury viewed a surveillance tape that captured the incident, albeit from a distance.

Defendant discussed the shooting with two former gang members, Oscar Tovar and Mark Torres. Detectives Manuel Castaneda and Nathan Kouri interviewed Mr. Tovar on August 7, 2013, two weeks after Mr. Beltran was killed. Defendant and Mr. Tovar had grown up together. Mr. Tovar referred to defendant as a "cousin." Mr. Tovar related the following. Rival gang members had tried to recruit defendant when he was young. But Mr. Tovar had instead recruited defendant to join a different gang. Mr. Tovar was formerly a member of that gang. The rival gang was out to get defendant. The rival gang's motive was that defendant had joined Mr. Tovar's gang. Mr. Tovar told the detectives there was a shooting and defendant "got" a rival gang member. Two or three days after the incident, defendant telephoned Mr. Tovar. Defendant said: "Hey man, I fucked up. I mean they [the rival gang] even looking for me right now 'cause they know I did it." In this post-shooting conversation, defendant said: a car crept up next to him; someone said, "Hey where are you from"; and he "lit 'em up." When interviewed by detectives, Mr. Tovar described part of post-shooting conversation about the killing, "[Defendant] got in the right with . . . he hit him . . . he didn't even let him stand up, he got him in the car."

Mr. Tovar and Mr. Torres both testified, reluctantly, for the prosecution. Mr. Tovar was 21 at the time of trial. Mr. Tovar's trial testimony was consistent with what he had earlier told the detectives. At trial, however, Mr. Tovar added two additional facts. Prior to the shooting, defendant went to his mother's house. On the way, a rival gang member tried to run defendant down with a truck. Further, when defendant left his mother's house, he was angry.

As noted, Mr. Torres also testified on behalf of the prosecution. Mr. Torres spoke to defendant after the shooting. Defendant said he had "got one of them" using a derogatory phrase for the rival gang. Mr. Torres testified: "I remember [defendant] telling me that they had pulled up on him and that they were in the car . . . talking shit to him, dissing [defendant's gang] in other words. And from there I guess one of the guys

3

had came out of the car. I think [defendant] said [the rival gang member] was strapped up, had a [gun] on him. . . . Banged on him and that's when [defendant] retaliated by him shooting at him." Defendant told Mr. Torres someone in the car said, "Fuck [defendant's gang]." In response, defendant pulled out his gun and fired three times. Defendant said he fired because he thought they were going to "light him up." Defendant knew Mr. Beltran was from the rival gang.

Defendant's mother, Maria Sandoval, also testified at trial. Ms. Sandoval said defendant had grown up, off and on, in the rival gang's territory. Moreover, Ms Sandoval had lived with a rival gang member when defendant was young. Ms. Sandoval further testified the rival gang members knew to leave defendant alone because he was her son.

## III. DISCUSSION

### A. Prior Offense Evidence

Over defense objection, the prosecution presented evidence that on October 4, 2010, defendant, then 14 years old, was arrested for possessing a loaded .25-caliber semiautomatic handgun. This arrest occurred a few blocks from the scene of the present shooting. Defendant told law enforcement officers he had the gun because he was looking for rival gang members; they had crossed out his gang's graffiti.

Division One of the Court of Appeal for this appellate district summarized the applicable law in *People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1059: "Evidence of uncharged misconduct is relevant to establish motive, intent, and absence of accident. (Evid. Code, § 1101, subd. (b); *People v. Ewoldt* (1994) 7 Cal.4th 380, 393.) Thus, evidence of uncharged misconduct may be admissible to establish common design or plan, intent, or identity, if a sufficient similarity exists, in nature and degree, between the uncharged misconduct and the charged offense. ([*People v.*] *Ewoldt,* [, *supra,* 7 Cal.4th] at p. 402.) 'In order to be admissible to prove intent, the uncharged misconduct must be

4

sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance.' [Citations.]'" (*Ibid.*) Nonetheless, the probative value of the evidence of the uncharged misconduct must outweigh the probability that its admission would create substantial danger of undue prejudice, of confusing the issues or misleading the jury. (Evid. Code, § 352.) [¶] We review a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352 for abuse of discretion. (*People v. Fuiava* (2012) 53 Cal.4th 622, 667-668.)" (Accord, *People v. Leon* (2015) 61 Cal.4th 569, 597, 599; *People v. Scott* (2015) 61 Cal.4th 363, 398-400.)

There was no abuse of discretion. Defendant's intent was the central issue in this case. The prosecution argued Mr. Beltran was shot because he was a rival gang member and not because of any need for self-defense. The defense asserted defendant fired his weapon in response to a verbal threat, which led him to believe he was about to be shot. The prior offense and current crime were similar. Both occurred in the same general neighborhood, in or near rival gang territory. In both cases defendant, a gang member, was armed with a loaded weapon. Both cases involved an intended or actual confrontation with a rival gang member. The trial court could reasonably conclude evidence of defendant's prior uncharged offense tended to show: his loyalty to his gang; his enmity toward rival gang members; his willingness to arm himself in anticipation of a confrontation with a rival gang member; the intent with which Mr. Beltran was shot; and that he did not act in real or perceived self-defense. (See *People v. Demetrulias,* 39 Cal.4th 1, 14; *People v. Sedillo, supra,* 235 Cal.App.4th at pp. 1059-1060.)

Further, as the trial court impliedly found, the prejudicial effect of admitting the prior uncharged offense evidence did not substantially outweigh its probative value. (Evid. Code, § 352; *People v. Ewodt, supra,* 7 Cal.4th at p. 404.) The jury knew defendant was a gang member. Defendant's gang affiliation was tattooed on his face. Defendant had previously possessed a loaded weapon while seeking out rival gang members. This prior offense was sufficiently similar to and not more inflammatory than the charged crime. Furthermore, the trial court instructed the jury it could consider the

evidence only as to defendant's motive and intent. The trial court also instructed the jury evidence of gang activity could not be considered on the issue of defendant's character or disposition to commit crime. We presume the jury followed those instructions. (*People v. Pearson* (2013) 56 Cal.4th 393, 477; *People v. Aranda* (2012) 55 Cal.4th 342, 387-388.) There was no danger of undue prejudice, of confusing the issues or misleading the jury.

## B. Jury Instructions

### 1. Introduction

Defendant raises two instructional error contentions. We review defendant's instructional error claims de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210; *People v. Sweeney* (2009) 175 Cal.App.4th 210, 223.) These contentions do not warrant reversal.

### 2. CALCRIM No. 3471

The trial court instructed the jury on an aspect of self-defense pursuant to CALCRIM No. 3471. CALCRIM No. 3471 states: "A person who (engages in mutual combat/ or who starts a fight) has a right to self-defense only if: [¶] 1. He actually and in good faith tried to stop fighting; [¶] AND [¶] 2. He indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting[;] [¶] AND [¶] 3. He gave his opponent a chance to stop fighting. [¶] If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight. [¶] However, if the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting

6

or communicate the desire to stop to the opponent, or give the opponent a chance to stop fighting. [¶] A fight is mutual combat when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied and must occur before the claim to self-defense arose." (CALJIC No. 3471.)

To begin with, *defendant* requested the instruction. And nothing in the record suggests this was other than a conscious, deliberate tactical choice. As a result, defendant arguably invited any error. (*People v. Wader* (1993) 5 Cal.4th 610, 657-658; *People v. Graham* (1969) 71 Cal.2d 303, 319.) At the very least, defendant forfeited any objection. (*People v. Enraca* (2012) 53 Cal.4th 735, 761; *People v. McKinnon* (2011) 52 Cal.4th 610, 675; *People v. Moore* (2011) 51 Cal.4th 386, 410.)

Further, defendant claims there was no factual basis for the instruction. As the Court of Appeal succinctly explained in *People v. Ross* (2007) 155 Cal.App.4th 1033, 1049: "A party is entitled to a requested instruction if it is supported by substantial evidence. (*Norman v. Life Care Centers of America, Inc.* (2003) 107 Cal.App.4th 1233, 1242.) Evidence is '[s]ubstantial' for this purpose if it is 'sufficient to "deserve consideration by the jury," that is, evidence that a reasonable jury could find persuasive.' (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.) At the same time, instructions *not* supported by substantial evidence should not be given. (*People v. Marshall* (1997) 15 Cal.4th 1, 39-40.) 'It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case. [Citation.]' (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)"

We disagree with defendant's assertion. As we explained in *People v. Johnson* (2010) 180 Cal.App.4th 702, 711, "CALCRIM No. 3471 charges a jury to make a *preliminary determination* of whether the defendant had the *right* to use force to defend himself when the defendant and the victim engaged in mutual combat, or when the defendant was the aggressor." Here, defendant claimed he acted in fear that he was about to be shot. There was evidence Mr. Beltran approached defendant's car from the rear. Defendant walked towards the car in which Mr. Beltran was seated. Defendant then pulled out his weapon and fired three times. Mr. Beltran, who was unarmed, was struck

7

in the head and upper torso. Given that evidence, the jury could reasonably conclude: defendant was the aggressor; after starting the fight, defendant made no attempt to withdraw, and; therefore, defendant did not have the right to use force to defend himself.

And, even if not forfeited, it is not reasonably probable the result would have been more favorable to defendant had the instruction not been given. (*People v. Debose* (2014) 59 Cal.4th 177, 205-206; *People v. Letner* (2010) 50 Cal.4th 99, 187; *People v. Guiton, supra,* 4 Cal.4th at p. 1130.) The trial court further instructed the jury: "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." The jury is presumed to have followed that instruction. (*People v. Pearson, supra,* 56 Cal.4th at p. 477; *People v. Aranda, supra,* 55 Cal.4th at pp. 387-388.) Here, as in *People v. Crandell* (1988) 46 Cal.3d 833, 872-873, disapproved on another point in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365, "[W]e are confident the jury was not sidetracked by the correct but irrelevant instruction . . . and we conclude that the giving of the instruction was harmless error.)" (Accord, *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1381.) If the jury found defendant neither engaged in mutual combat nor started the fight, it would have ignored the irrelevant instruction.

### 3. CALCRIM No. 3472

The trial court gave an additional self-defense instruction, CALCRIM No. 3472. CALCRIM No. 3472 states, "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force." The instruction correctly states the law. (*People v. Enraca, supra,* 53 Cal.4th at p. 761 [CALJIC No. 5.55]; but see *People v. Ramirez* (2015) 233 Cal.App.4th 940, 947 ["CALCRIM No. 3472 *under the facts before the jury* did not accurately state the governing law," italics added].) Defendant asserts, however, that the evidence did not

8

support the instruction. But defendant concedes, "These instructions, [CALCRIM Nos. 3471 and 3472] better fit evidence that gang members went looking for rivals, armed and prepared to start a confrontation in order to fight or kill." Here, there was substantial evidence as follows. Defendant willingly and intentionally entered rival gang territory. Defendant's gang affiliation was tattooed on his face. Defendant was armed with a loaded weapon. Defendant was walking in an area disputed by rival gangs. Defendant fired that weapon at an unarmed rival gang member. Given all of these facts, taken together, the jury could reasonably conclude defendant was armed, alert for rival gang members and ready to provoke a confrontation. Even if it was error to give the instruction, we apply the *People v. Watson* (1956) 46 Cal.2d 818, 836 standard of review. (*People v. Debose, supra,* 59 Cal.4th at pp. 205-206; *People v. Guiton, supra,* 4 Cal.4th at p. 1130.) It is not reasonably probable the result would have been more favorable to defendant absent the instruction. As instructed, if the jury found the instruction irrelevant, it would have ignored it.

## C. Second Degree Murder

Defendant challenges the sufficiency of the evidence to support his second degree murder conviction. Defendant asserts that at most he is guilty of voluntary manslaughter based on imperfect self-defense. Defendant also refers to heat of passion, however, no such theory was raised in the trial court. These contentions are meritless given the controlling standard of review.

We apply the well-established sufficiency of the evidence standard of review: "When reviewing a challenge to the sufficiency of the evidence, we ask '"whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" (*People v. Edwards* (2013) 57 Cal.4th 658, 715, quoting *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for '"substantial evidence—that is, evidence

9

which is reasonable, credible, and of solid value'" that would support a finding beyond a reasonable doubt. (*People v. Boyce* (2014) 59 Cal.4th 672, 691.)" (*People v. Banks* (2015) 61 Cal.4th 788, 804; accord, *People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

Our Supreme Court has held, "Second degree murder is the unlawful killing of a human being with malice, but without the additional elements (i.e., willfulness, premeditation, and deliberation) that would support a conviction of first degree murder. (§ 187, subd. (a), 189; *People v. Nieto Benitez* (1992) 4 Cal.4th 91, 102.)" (*People v. Hansen* (1994) 9 Cal.4th 300, 307, disapproved on another point in *People v. Sarun Chun* (2009) 45 Cal.4th 1172, 1199; accord, *People v. Robertson* (2004) 34 Cal.4th 156, 164, disapproved on another point in *People v. Sarun Chun, supra,* 45 Cal.4th at p. 1201.) Further, our Supreme Court has held: "Malice may be express or implied. (§ 188.) It is express 'when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature.' (§ 188.) It is implied 'when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.' (§ 188.) . . . [I]mplied malice has both a physical and a mental component, the physical component being the performance of '"an act, the natural consequences of which are dangerous to life,"' and the mental component being the requirement that the defendant '"knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life."' [Citations.]" (*People v. Hansen, supra,* 9 Cal.4th at pp. 307-308; accord, *People v. Robertson, supra,* 34 Cal.4th at p. 164.)

Substantial evidence supported the second degree murder verdict. Defendant was a committed gang member. His gang affiliation was tattooed on his face. Defendant was knowingly and willingly in rival gang territory. He was armed with a loaded weapon. He was near a disputed intersection. There was intense rivalry between defendant's gang, the victim's gang and a third gang with respect to that territory. Defendant had been assaulted by a rival gang member only a few hours earlier. A person defendant knew to be a rival gang member drove up from behind. The surveillance video shows defendant walking towards the car that had approached from behind, raising his arm and pointing the gun. Defendant shot Mr. Beltran three times. The bullets struck Mr.

10

Beltran, who was in the car, in the head and upper torso. Mr. Beltran was unarmed. Defendant ran away after the shooting and disposed of the gun. Defendant boasted that he had "got one of them" using a derogatory name to describe the rival gang. As noted, defendant spoke with Mr. Tovar immediately after the fatal shooting of Mr. Beltran. According to defendant, Mr. Beltran never even had a chance to stand up outside of the car. The jury could reasonably conclude defendant was not acting in self-defense or in the actual but unreasonable belief in the need for self-defense when Mr. Beltran was shot.

### D. The Prosecution's Gang Evidence

Defendant argues Sergeant Kenneth Price was permitted to give improper opinion testimony. Defendant argues, "It was improper for Price to offer his opinion appellant 'murdered' Beltran because appellant was a gang member." Defendant further argues this testimony invaded the jury's province and lessened the prosecution's burden in violation of his Fifth, Sixth and Fourteenth Amendments rights. The prosecutor posed the following hypothetical question of Sergeant Price: "A known member of [defendant's gang] is in [rival gang] territory carrying a loaded gun. He is with a second known female . . . gang member walking down the sidewalk. A car starts to approach, the first gang member walks towards the car and he comes to a standstill. The car contains a known member of the [rival] gang. [¶] When the first gang member approaches the car he's there for a couple of seconds. The [rival] gang member in the car says "Fuck [defendant's gang]." The [first] gang member pulls out his gun, shoots, and hits the [rival] gang member in the chest. The [rival] gang member starts to drive away, the [first] gang member keeps shooting, hitting him two more times. Once in the back of the head and once in the back. The [rival] gang member dies. Both [first and female] gang members drive off. Couple days later the shooter tells two of his fellow gang members about what happened. [¶] Do you have an opinion whether or not the crime I just described, the murder, was committed for the benefit of, at the direction of, or in association with [defendant's gang]." Sergeant Price responded, "My opinion is that that

11

crime that you described was for the benefit of, for the association of [defendant's] gang."

Defendant did not object in the trial court to the hypothetical question or to Sergeant Price's response. Nor has defendant shown an objection would have been futile merely because the trial court overruled other defense objections to Sergeant Price's testimony. Therefore, the entire issue has been forfeited. (Evid. Code, § 353, subd. (a); *People v. Coffman and Marlowe* (2004) 34 Cal.4th 1, 81-82.)

Even if the issue were properly before us, we would not find any abuse of discretion. The trial court had discretion to permit Sergeant Price to testify about criminal street gangs. (*People v. Gonzalez* (2006) 38 Cal.4th 932, 944; *People v. Gardeley* (1996) 14 Cal.4th 605, 617.) The trial court's decision to admit the testimony will not be disturbed on appeal absent a manifest abuse of discretion. (*People v. Roberts* (1992) 2 Cal.4th 271, 298.) Further, Sergeant Price, an experienced gang investigator, may render an opinion whether a crime is gang related based on a hypothetical question tracking the facts of the case. (*People v. Xue Vang* (2011) 52 Cal.4th 1038, 1045; *People v. Gonzalez, supra,* 38 Cal.4th at pp. 946-947; *People v. Gardeley, supra,* 14 Cal.4th at p. 618.) Without abusing its discretion, the trial court could reasonably conclude the hypothetical question posed in the present case was permissible. (*People v. Xue Vang, supra,* 52 Cal.4th at p. 1045 ["'Based on the facts of that hypothetical, do you have an opinion as to whether this particular crime was committed for the benefit of and [in] association with or at the direction of the Tiny Oriental Crips street gang?'"]; *People v. Gardeley, supra,* 14 Cal.4th at p. 619 ["the prosecutor asked Boyd if in his expert opinion an attack as described would be 'gang-related activity'"]; *People v. Garcia* (2007) 153 Cal.App.4th 1499, 1505 ["do you have an opinion as to whether this particular [hypothetical] offense was committed for the benefit of . . . [a gang]"].)

And, contrary to defendant's assertion, Sergeant Price did not express an opinion as to whether defendant committed murder. Sergeant Price gave an opinion whether a hypothetical crime, which the prosecutor described as "murder," was committed for the gang's benefit. In his response, Sergeant Price did not use the word "murder," instead, he

12

referred to "the crime that you described." Sergeant Price had no personal knowledge whether defendant murdered Mr. Beltran and if so, how or why. It was within the jury's competence to weigh the evidence and determine what the facts were, including whether defendant committed a murder. Sergeant Price could not testify directly whether defendant committed a murder for gang purposes. But Sergeant Price properly could express an opinion based on a hypothetical question tracking the facts of this case. And his opinion could extend to whether, if the jury found a murder in fact occurred, it was committed for a gang purpose. (*People v. Xue Vang, supra,* 52 Cal.4th at pp. 1048-1049; *People v. Gonzalez, supra,* 38 Cal.4th at p. 947.)

We reject defendant's assertion his trial attorney rendered ineffective assistance of counsel by failing to object to the hypothetical question or the response thereto. A defense attorney's failure to interpose a meritless objection does not amount to ineffective assistance. (*People v. Farnam* (2002) 28 Cal.4th 107, 186, fn. 36; *People v. Davis* (1995) 10 Cal.4th 463, 539, fn. 36; *People v. Price* (1991) 1 Cal.4th 324, 387.) More critically, there is no basis for concluding that there was a reasonable probability the trial court would have ruled in defendant's favor had such an objection been interposed. And had the prosecutor's reference to "murder" been deleted from a hypothetical question, there is no reasonable probability that the result would have been more favorable to defendant. Defendant has failed to sustain his prejudice burden in connection with his ineffectiveness assistance of counsel contention. (*In re Welch* (2015) 61 Cal.4th 489, 522; *People v. Grimes* (2015) 60 Cal.4th 729, 773.)

E. Prosecutorial Misconduct

Defendant argues three remarks by Deputy District Attorney Angie Christides during closing argument constituted prosecutorial misconduct. First, Ms. Christides described self-defense as created for a reasonable person, not a reasonable gangster. Second, Ms. Christides asserted defendant's self-defense claim—he thought he was going to be shot—was uncorroborated. Third, the deputy district attorney stated, "Nobody took

13

the stand and said [the victim] was reaching for a gun or to the floorboard or to the glove compartment."

As to each challenged remark, defendant either failed to object, or objected but failed to request an admonition. And nothing in the record suggests an objection would have been futile or an admonition ineffective. As a result, defendant forfeited the present arguments. (*People v. Charles* (2015) 61 Cal.4th 308, 327-328; *People v. Centeno* (2014) 60 Cal.4th 659, 674.)

Even if defendant's present arguments were properly before us, we would find no prosecutorial misconduct. Our Supreme Court has held: "The standards under which we evaluate prosecutorial misconduct may be summarized as follows. A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44; accord, *People v. Johnson* (2015) 61 Cal.4th 734, 780; *People v. Leon, supra,* 61 Cal.4th at p. 605.) Furthermore, "[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion. (*People v. Ayala* (2000) 23 Cal.4th 225, 283-284.)" (*People v. Morales, supra,* 25 Cal.4th at p. 44; accord, *People v. Hajek* (2014) 58 Cal.4th 1144, 1239.) Stated differently, an appellate court reviews a prosecutor's remarks to determine whether it is reasonably likely the jury misconstrued or misapplied them. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1304; *People v. Roybal* (1998) 19 Cal.4th 481, 514.)

As noted above, Ms. Christides described self-defense as created for a reasonable person, not a reasonable gangster. In her opening argument Ms. Christides stated: "What's malice aforethought and what is a lawful excuse? Let's start with lawful excuse. When we're talking about lawful excuse we're talking about self-defense. There are two types. There is perfect self-defense or complete self-defense, which if you find, then the

14

defendant is not guilty of murder. And there is imperfect self-defense, which if you find that to be true then the defendant is guilty of voluntary manslaughter. But I want to make something perfectly clear. Self-defense . . . was created for a reasonable person, for a person who is at home and a burglar breaks in and that burglar forces a gun into the homeowner's house and that homeowner pulls out his gun and shoots and fires back and kills. That is self-defense. Self-defense is when you're in a fight and the person you're fighting pulls out a knife, you pull out a gun and kill that person. That is self-defense. Self-defense was created for a reasonable person, not for a reasonable gangster. [¶] Gang banging is not the same as self-defense. Self-defense is not a shield for gangsters to use when they're engaged in normal gang banging activities. I want to make that clear from the get-go. Gang banging is not for self-defense. *Self-defense is for reasonable people, not reasonable gangsters.* [¶] So the right to self-defense. Defendant acted in lawful self-defense if he reasonably believed he was in imminent danger of suffering bodily injury. Imminent danger is immediate danger. Did he believe that immediately in those four seconds he was going to be hurt. He reasonably believes the immediate use of force was necessary to defend against danger and to use no more force than necessary. Like I said, it's made for the reasonable person. It's not made for gang life." (Italics added.)

In her argument for the defense, defendants' attorney, Alexis L. Salzman, took issue with Ms. Christides's comments: "I want to start off by saying something very important. Everybody, everyone, gang members, lawyers, jurors, law enforcement, judges, everybody is entitled to the protection of the law. Everybody is entitled to use self-defense as it was read to you by his Honor. I don't want any confusion on that. And the court has instructed you what the law is regarding self-defense. There is nothing in the law that says gang members are not allowed to use self-defense. Nothing. [¶] In addition, I'm going to read this because I want to make sure there's no question. CALCRIM 505 . . . . 'When deciding whether defendant's beliefs were reasonable, consider all the circumstances as they were known to and appear to the defendant and consider what a reasonable person in a similar situation with similar knowledge would

15

have believed.' What that means is you absolutely may consider all of the surrounding circumstances of the gang culture. Nothing in the law says that the only people allowed to use self-defense are non gang members in their home[s] in the middle of the night. That's not the law."

In her rebuttal argument Ms. Christides said: ". . . I absolutely agree self-defense is something that is everyone's right. It doesn't matter if you're a gang member of if you're a judge, doesn't matter what you are. Everyone has that right. But the law is clear, . . . . When deciding whether the defendant's beliefs are reasonable we consider all the circumstances, of course we do. But you have to consider what a reasonable person in a similar situation would have believed. And that's what I was trying to get across earlier. To decide what a reasonable person would believe, not what a reasonable gangster would believe. It's not a different standard just because the defendant is a gang member. We still use self-defense in a reasonable way."

Contrary to defendant's assertion, Ms. Christides did not misstate the law. As the jury was instructed pursuant to CALCRIM No. 505, "When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed." (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082-1083; *People v. Glover* (1903) 141 Cal. 233, 239; *People v. Williams* (1977) 75 Cal.App.3d 731, 739; *People v. Ortiz* (1923) 63 Cal.App. 662, 668.) In *Williams,* the Court of Appeal explained, "To justify a homicide under a plea of self-defense it must appear not only that the defendant actually believed himself in deadly peril, but that as a reasonable man he had sufficient grounds for his belief." (*People v. Williams, supra,* 75 Cal.App.3d at p. 739.) Even if the prosecutor's analysis was improper to some degree, any prejudice was substantially ameliorated by Ms. Salzman's argument and Ms. Christides's clarifying remarks in rebuttal. Further pertinent to the

16

prejudice is that the standard instructions that argument is not evidence[2] and the jurors must follow the law were read to the jury.[3] (*People v. Cash* (2002) 28 Cal.4th 703, 734 [presence of some impropriety in a prosecutor's argument was cured by the "standard admonition that argument is not evidence."])  We presume the jury followed those instructions.  (*People v. Pearson, supra,* 56 Cal.4th at p. 477; *People v. Aranda, supra,* 55 Cal.4th at pp. 387-388.)

As noted, defendant takes issue with Ms. Christides's assertion that defendant's self-defense claim—that he thought he was going to be shot—had to be corroborated. Ms. Christides argued:  "And [Mr. Torres] gives us this statement that the defendant said, 'I thought he was going to light me up.'  And what I expect is that the defense is going to hang their hat on that statement, and say, see, look, we have his statement.  He thought he was going to get lit up.  That is his actual and reasonable belief because that's what he said.  [¶]  But there must be some corroboration for that.  There has to be something to give that lends to that belief.  A reason for him to believe that.  Otherwise it doesn't make any sense.  That's like I was saying.  Me walking down the street shooting a random person and saying I thought he was going to shoot me when there's no weapons found on that person, no reason to think he was going to shoot me.  There has to be some physical evidence, something more than the defendant saying I thought he was going to light me up.  There has to be a reason for him to say that.  Otherwise we could all go around shooting at people and saying I thought he was going to kill me."  At this point, Ms. Salzman interposed an objection, "Misstates the law."  The trial court ruled:  "Overruled. Just keep in mind I'm giving you the instructions on the law and follow my instructions." Ms. Christides went on to discuss the testimony of Mr. Torres and Mr. Tovar:  "Neither one of them said defendant said [the victim] had a gun or a knife or a weapon or a lasso

---

[2]    The trial court instructed the jury:  "Nothing that the attorneys say is evidence.  In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence."

[3]    The trial court instructed the jury:  "You must follow the law as I explain it to you, even if you disagree with it.  If you believe that the attorney's comments on the law conflict with my instructions, you must follow my instructions."

or anything that could be used to hurt the defendant. Neither one of them ever said that the victim was reaching for his waistband as if to pull out a gun, that the victim was going into the glove compartment, reaching to the floorboard, anything. Neither one of them said anything about any movements the victim was making that could be interpreted as giving the defendant a belief of immediate danger. None. Nothing. All we get from them is [the] victim was in the car doing nothing. [¶] We also have to look at the victim's conduct. And we're limited by the evidence we have. So like I said, we have no evidence [the victim is] reaching. *Nobody took the stand and said [the victim] was reaching for a gun or to the floorboard or to the glove compartment.* There was a brick. Nothing like that. No evidence of a weapon at the crime scene. . . . No gun getting tossed. . . . There's no weapon on the victim." (Italics added.)

Although he raised the issue, defendant has not presented any argument on appeal specific to Ms. Christides's lack of corroboration remarks. In any event, Mr. Christides's comments related to the evidence rather than to the law. And, our Supreme Court has held: "[T]he prosecutor 'enjoys wide latitude in commenting on the evidence, including the reasonable inferences and deductions that can be drawn therefrom.' (*People v. Hamilton* (2009) 45 Cal.4th 863, 928.)" (*People v. Collins* (2010) 49 Cal.4th 175, 230; accord, *People v. Stanley* (2006) 39 Cal.4th 913, 951.) Ms. Christides was merely calling the jury's attention to the absence of evidence Mr. Beltran was about to shoot defendant. This was a proper argument. (*People v. Morales, supra,* 25 Cal.4th at p. 44; *People v. Avena* (1996) 13 Cal.4th 394, 443 [prosecutor merely pointed out defendant did not present any mitigating evidence]; *People v. Stanley* (1995) 10 Cal.4th 764, 830 [prosecutor allowed fair comment on the state of the evidence].)

Finally, defendant asserts Ms. Christides committed misconduct when she argued, "Nobody took the stand and said [the victim] was reaching for a gun or to the floorboard or to the glove compartment." Ms. Christides argued: "We also get from them [the former gang members] that [defendant] needed to prove himself as a . . . gang member. And what's consistent between the two of them is that neither one of them ever mentioned the defendant saying the victim had a gun. Neither one of them said defendant

18

said he had a gun or a knife or a weapon or a lasso or anything that could be used to hurt the defendant. Neither one of them ever said that the victim was reaching for his waistband as if to pull out a gun, that the victim was going into the glove compartment, reaching to the floorboard, anything. Neither one of them said anything about any movements the victim was making that could be interpreted as giving the defendant a belief of immediate danger. None. Nothing. All we get from them is [the] victim was in the car doing nothing. [¶] We also have to look at the victim's conduct and we're limited by the evidence we have. So like I said, we have no evidence he's reaching. *Nobody took the stand and said he was reaching for a gun or to the floorboard or to the glove compartment.* There was a brick. Nothing like that. No evidence of a weapon at the crime scene. No bullets around the gun. No gun being tossed. Nothing being tossed from the windows during that video." (Italics added.)

In *Griffin v. California* (1965) 380 U.S. 609, 614, the United States Supreme Court held a prosecutor may not comment on a defendant's failure to testify. However, *Griffin* does not bar a prosecutor's comment on the state of the testimony including the absence of evidence controverting the prosecution's case or corroborating the defendant's position. (*People v. Thomas* (2012) 54 Cal.4th 908, 939, 945; *People v. Stevens* (2007) 41 Cal.4th 182, 210; *People v. Carter* (2005) 36 Cal.4th 1215, 1266-1267; *People v. Harrison* (2005) 35 Cal.4th 208, 257 ["*Griffin's* prohibition . . . '"does not extend to comments on the state of the evidence"]; *People v. Bradford* (1997) 15 Cal.4th 1229, 1339; *People v. Sanders, supra,* 11 Cal.4th at p. 529 ["The prosecutor referred to the absence of evidence, not to defendant's failure to testify"]; *People v. Johnson* (1992) 3 Cal.4th 1183, 1229; *People v. Mitcham* (1992) 1 Cal.4th 1027, 1051.)

Ms. Christides's comment, read in the context of her argument as a whole, and in light of the evidence presented, did not implicate defendant's failure to testify. Ms. Christides simply stated there was no evidence Mr. Beltran was reaching for a weapon when he was shot. This was proper comment on the state of the evidence. (See *People v. Carrington* (2009) 47 Cal.4th 145, 197; *People v. Stevens, supra,* 41 Cal.4th at p. 210;

19

*People v. Szeto* (1981) 29 Cal.3d 20, 34 [prosecution pointed out defense had not produced alibi witness for crucial period].)

And defendant was not the only person who could have testified to evidence the victim appeared to reach for a weapon. Defendant was accompanied at the time of the shooting by a fellow gang member. Further, Mr. Torres or Mr. Tovar might have given testimony to that effect. Mr. Torres spoke to defendant. In that conversation, defendant referred to the fact that Mr. Beltran had a gun. But nothing in that conversation indicated Mr. Beltran was reaching for a gun or brandishing one immediately prior to the shooting. It is not reasonably likely the jury misconstrued Ms. Christides's comment as a reference to defendant's failure to testify. (*People v. Bryant* (2014) 60 Cal.4th 335, 387; *People v. Sanders, supra,* 11 Cal.4th at p. 529.) There was likewise no violation of defendants' constitutional rights. (*People v. Roybal, supra,* 19 Cal.4th at p. 515, fn. 9; *People v. Berryman* (1993) 6 Cal.4th 1048, 1103, fn. 28, disapproved on another point in *People v. Hill* (1998) 17 Cal.4th 800, 822-823.)

The foregoing remarks did not constitute prosecutorial misconduct. There was no reasonable likelihood the prosecutor's remarks misled the jury. As a result, there was no prejudice. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1336; *People v. Tully* (2012) 54 Cal.4th 952, 1023.) Further, because there was no misconduct, Ms. Salzman was not constitutionally ineffective in failing to object to Ms. Christides's remarks. (*People v. Cole* (2004) 33 Cal.4th 1158, 1202, fn. 11; *People v. Boyette* (2002) 29 Cal.4th 381, 433; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.)

G. The Sealed Search Warrant Affidavit

Defendant requests that we independently review the sealed *in camera* proceedings and search warrant. Defendant argues we should determine whether the trial court erred in denying his motions to unseal the affidavit and traverse and quash the warrant. A search warrant affidavit may be sealed in whole or in part if necessary to implement the Evidence Code section 1041 privilege or protect a confidential informant's

identity. (*People v. Hobbs* (1994) 7 Cal.4th 948, 971; *People v. Martinez* (2005) 132 Cal.App.4th 233, 240; see Evid. Code, § 1042, subd. (b).) We have independently reviewed the record including the sealed materials. The trial court properly sealed a portion of the search warrant affidavit. And the trial court correctly denied defendant's search warrant related motions. (*People v. Hobbs, supra,* 7 Cal.4th at pp. 972-973, 975, 977; *People v. Martinez, supra,* 132 Cal.App.4th at p. 242; *People v. Aho* (1985) 166 Cal.App.3d 984, 989-993.) Further, under the totality of the circumstances, there was probable cause to issue the search warrant. (*People v. Kraft* (2000) 23 Cal.4th 978, 1040; *People v. Hobbs, supra,* 7 Cal.4th at p. 975; *People v. Martinez, supra,* 132 Cal.App.4th at p. 242; *People v. Mikesell* (1996) 46 Cal.App.4th 1711, 1716.) There was no Fourth Amendment or due process violation. (See *Illinois v. Gates* (1983) 462 U.S. 213, 238; *People v. Bradford, supra,* 15 Cal.4th at p. 1291.)

### H. Sentencing: Section 12022.53, Subdivisions (b), (c) and (d)

The jury found true firearm enhancements under section 12022.53, subdivisions (b), (c) and (d). The trial court sentenced defendant as follows: "[Y]ou are to serve an additional 25 years to life mandatory and consecutive pursuant to Penal Code section 12022.53(d). And although the jury did find the subsection (b) and (c) true for that same code section, *no additional time is going to be imposed.* The punishment is stayed as it relates to those two subsections pursuant to Penal Code section 654." (Italics added.) The trial court was required, however, to *impose* and then stay the sentences under subdivisions (b) and (c) of section 12022.53. (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1122-1123; *People v. Warner* (2008) 166 Cal.App.4th 653, 659.) The judgment must be modified and the abstract of judgment amended to so provide. (*People v. Gonzalez, supra,* 43 Cal.4th at pp. 1122-1123; *People v. Gonzalez* (2010) 180 Cal.App.4th 1420, 1427-1428.)

## IV. DISPOSITION

The judgment is modified to impose and stay a 10-year sentence under section 12022.53, subdivision (b), and a 20-year sentence under section 12022.53, subdivision (c). The judgment is affirmed in all other respects. Upon remittitur issuance, the superior court clerk is to prepare an amended abstract of judgment and deliver a copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P.J.

We concur:

MOSK, J.

BAKER, J.

22